**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Federal Deposit Insurance Corporation, | ) | No. CV 08-2360-PHX-JAT |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| Spectrum Mortgage Services, LLC, | ) | |
| Defendant. | ) | |

Pending before the Court are Cross Motions for Summary Judgment (Docs. 34 & 50). The Court now rules on the Motions.

**I. BACKGROUND**

First National Bank of Arizona ("FNBA") entered into a Broker Agreement (the "Contract") with Defendant Spectrum Mortgage Services, LLC ("Spectrum" or Defendant) on October 10, 2006. Pursuant to the Contract, FNBA would originate mortgage loans processed and/or packaged by Spectrum and submitted to FNBA for underwriting approval and funding. Among other loans, Spectrum submitted loan number 5300031241 (the "Loan") to FNBA.

On November 20, 2006, Carolyn F. Singer (the "Borrower") executed a promissory note (the "Note") in the principal amount of $48,750 to evidence the Loan. Section 6 of the Note provided that a default would occur if the Borrower did not pay the full amount of each monthly payment on the due date. On January 1, 2007, the Borrower defaulted on the Loan

1  by failing to make her first mortgage payment.

2  At the time the Note was executed, as was customary, FNBA sold the loan to the First National Bank of Nevada ("FNBN"), FNBA's sister bank. (Doc. 54 Exs. F&G.) FNBA and FNBN were both owned and controlled by First National Bank Holding Company. FNBN then packaged the Loan with other mortgages for sale to Morgan Stanley. (Doc. 54 Ex.E.) When the Borrower failed to cure her default, FNBN repurchased the Loan from Morgan Stanley upon request. (Doc. 54 DSOF 37.) FNBA then repurchased the Loan from FNBN and thereafter submitted the repurchase demand letters to Spectrum.

Around June 28, 2007, FNBA sold an interest in the Loan to Lamb, NPA, LLC, but claims it retained an interest in the Loan. Plaintiff FDIC characterizes the transaction between FNBA and Lamb LLC as a loan participation agreement.[1] Spectrum asserts that NPA LLC apparently paid nothing for its interest in the loan package. Spectrum also argues that the sale to Lamb NPA, LLC, which was owned and operated by Robert A. Lamb – who also owned and operated FNBA – could not constitute a sale to an unaffiliated party.

On July 25, 2007, July 30, 2007, and August 10, 2007, FNBA sent letters to Spectrum demanding that Spectrum repurchase the Loan. The demand letters read, in pertinent part:

> Pursuant to the contractual agreement (the "Agreement") by and between Spectrum Mortgage Services LLC (the "Client") and First National Bank of Arizona (the "Bank"), the Bank requests that the Client provide a remedy for the breach by the Client of various representations, warranties, covenants or conditions contained in the Agreement, including without limitation such breaches and defaults associated with the Loan that are set for below. Specifically, the Bank demands that the Client repurchase the Loan within thirty (30) days of the date of this notice.

---

[1] A loan participation agreement is a shared loan, an undertaking by one financial institution, the "lead," to divide a large loan that it has or will have on its books into shares, which the lead then offers for sale to other participant financial institutions. *FDIC v. Adams*, 931 P.2d 1095, 1104 (Ariz. Ct. App. 1996). The lead bank originates and consummates the loan and retains all loan documents. *Id*. The participant institutions then enjoy the benefits accompanying a loan without having to deal directly with borrowers or with servicing the loan. *Id*.

> Debt and real estate owned misrepresentation. FNBA found using Internet sources such as Win2Date . . . that all REO was not disclosed, the borrower has ownership in properties located at . . ., which was purchased on . . .. FNBA found that Mersopline.com disclosed that the property located at . . . has a mortgage that opened on 06/30/2006 in the amount of $63,000 . . ., however the lenders were not disclosed and the monthly payment amounts are unknown.
>
> Notwithstanding this repurchase demand, the Bank will immediately begin the process of selling the Loan to an unaffiliated third party, likely at a discounted price due to the defaults/breaches identified above. . . .

(Doc. 35 Ex.F.) In essence, the demand letters accuse Spectrum of not exercising due care in recommending the Loan. The demand letters never mention that the Borrower had defaulted on the Loan.

Spectrum refused in writing to repurchase the Loan on November 12, 2007. Spectrum claims it refused to repurchase the Loan because it did not violate its duty of care in recommending the Loan to FNBA, the only specific "breach" mentioned in the demand letters.

A Decree of Foreclosure was entered by the Marion Superior Court of Indiana against the property securing the Loan on January 16, 2008. (Doc. 54 Ex.L.) FNBA filed the Complaint roughly four months later on April 28, 2008. The Complaint specifically mentioned Borrower's default on the Loan. Spectrum filed its Answer on May 19, 2008. On June 18, 2008, FNBA foreclosed on the property securing the Loan and sold it to a Ms. Converse for $11,000.

FNBA merged with FNBN, which became the successor in interest to FNBA. (Doc. 35 ¶18.) On July 25, 2009, FNBN was declared insolvent, and the Federal Deposit Insurance Corporation ("FDIC" or Plaintiff) was appointed as FNBN's receiver. (Doc. #35 Ex.J.) The FDIC was substituted as the proper plaintiff here on October 20, 2008. (Doc. 35 ¶19.)

This case was removed to this Court on December 29, 2008. Plaintiff filed a Motion for Summary Judgment on September 24, 2009. (Doc. 34.) Spectrum filed its Motion for Summary Judgment on February 12, 2010. (Doc. 50.)

## II. LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, summary judgment is mandated, "...against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of pointing out to the Court the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-movant to establish the existence of material fact. *Id.* The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id.* at 247-48. However, in the summary judgment context, the Court construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

## III. ANALYSIS

Because Plaintiff has abandoned any claim that Spectrum violated the standard of care in recommending the Loan (Doc. 46 pp.4-5), the Court finds that no issues remain for a jury to resolve. The parties agree regarding all the facts the Court finds necessary to resolve the case. The cross motions for summary judgment call for contract interpretation, which is a

question of law for the Court to decide. *Rand v. Porsche Fin. Servs.*, 167 P.3d 111, 121 (Ariz. Ct. App. 2007).

The following Contract provisions are at issue in this case:

> 6. **Remedies for Breach**. Upon the occurrence of any breach of the representations, warranties, covenants or conditions contained in this Agreement by Broker, or upon the occurrence of any event of default by borrower under the terms or conditions of a mortgage or Note within 120 days after the date on which the first payment on the applicable Loan was due to Lender, Lender shall have the right to require Broker to repurchase the Loan or Loans affected by such breach for a price equal to the then outstanding principal balance of such Loan(s) plus (i) all accrued and unpaid interest due on such Loans(s) as of the date of repurchase, (ii) any premium or above par pricing paid by Lender for such Loan and (iii) all other fees, penalties, charges or expenses (including reasonable attorney fees) assessed against or incurred by Lender in connection with the Loan(s) (the sum of such amounts, the "Repurchase Price").
>
> Lender may, in its sole discretion, elect to sell any Loan(s) subject to repurchase pursuant to this Agreement to an unaffiliated third party in lieu of requiring Broker to repurchase such Loan(s). Upon the occurrence of such a third party sale, Broker's liability to lender for such Loan(s) shall be equal to the amount of the Repurchase Price less the actual amount received by Lender in such third party sale (which amount shall conclusively be deemed to be a reasonable mitigation of Lender's damages). Lender shall have the right of setoff for all amounts owed to it from Broker pursuant to this Section 6. Such right of offset shall be from any funds of Broker held by Lender or due to Broker from Lender. In addition, Lender shall have the right to specific performance in enforcing Broker's obligation to repurchase any Loan pursuant to this Agreement. . . .
>
> 7. **Indemnity**. Broker shall indemnify and hold harmless Lender, its . . . successors and assigns against any loss, damage, claim, expense, liability or cost (including reasonable attorney fees) arising from any breach by Broker of the provisions of this Agreement.

(Doc. 35 Ex.A p. 5.)

The parties do not dispute that Borrower defaulted on her Loan within 120 days of the date her first mortgage payment was due. Borrower's default triggered FNBA's right to relief under Section 6 of the Contract. FNBA could either: 1) demand that Spectrum repurchase the Loan under the terms set out in the first paragraph of Section 6 or 2) sell the *Loan* to a non-affiliated third party and seek any deficit from Spectrum.

- 5 -

FNBA had sold the Loan to FNBN, which had sold the loan to Morgan Stanley. But FNBA again owned the Loan, through repurchase, at the time FNBA demanded that Spectrum repurchase the Loan. FNBA had the contractual right to force FNBA to repurchase the Loan. If FNBA had proceeded under paragraph two of Section 6 by selling the Loan to an unaffiliated party, then its right to relief would have been governed by that paragraph, rather than paragraph 1.

Spectrum argues that FNBA waived its right to demand repurchase under paragraph 1 of Section 6 by twice selling the Loan before it foreclosed on the Borrower's property. Spectrum further argues that Plaintiff cannot recover under paragraph two of Section 6 because the only sales of the Loan were to affiliated parties and the foreclosure does not qualify as a sale of the Loan.

The Court agrees with Spectrum that the only sale, presuming for the purposes of these motions that the participation agreement can be characterized as a "sale," to an unaffiliated third party was a sale of the property securing the Loan, not the sale of the Loan itself.[2] Section 6 does not mention sale of the property underlying a mortgage loan as a remedy. The Court therefore finds that Plaintiff cannot recover under paragraph 2 of Section 6.

But Spectrum cannot have it both ways. An event of default definitely occurred. If FNBA did not avail itself of the remedy provided in paragraph 2 because it did not sell the Loan to an unaffiliated third party, then FNBA did not cut off its right to relief under paragraph 1. Even though FNBA sold the property securing the Loan, the parties have not asserted that FNBA or its successors extinguished or otherwise forgave the Loan. Plaintiff therefore can recover under paragraph 1 of Section 6.[3]

---

[2] Plaintiff concedes that FNBA, FNBN, and Lamb, NPA, LLC were all affiliated parties.

[3] The Court does not agree with Spectrum's "unclean hands" argument.

- 6 -

Although Plaintiff can recover under paragraph 1, the Court finds it would be inequitable for Plaintiff to receive the Repurchase Price under the Contract without an offset for the amount received by FNBA for the property securing the Loan. FNBA received $11,000 from Ms. Converse after foreclosing on the property securing the Loan. Spectrum therefore owes Plaintiff the principal amount of the Loan outstanding at the time of the default – $48,750, less the $11,000 received in the foreclosure sale, or $37,750.[4]

Spectrum also owes interest on the $37,750 at the Borrower's contract rate in the Note, which was 8.25%.[5] Plaintiff argues that Spectrum owes pre-judgment interest of 8.25% from the date Spectrum refused to repurchase the Loan. The Court finds that the more appropriate date from which to calculate the interest due is the date the Complaint was filed – April 28, 2008.

FNBA's repurchase demand letters did not mention that the Borrower had defaulted on the Loan. Although Plaintiff is correct that the Contract did not specify a certain type of notice that had to be given in the event of default and that FNBA did not limit the breaches to those specifically listed in the demand letters, the Court believes FNBA was the party in the best position to know about the Borrower's default. FNBA should have informed Spectrum of the default in the repurchase demand letters.

Even though the Court has determined that the notice provided to Spectrum in the repurchase demand letters was insufficient, there is no dispute that Spectrum knew of the

---

[4] The Court will not order Spectrum to pay the costs incurred by FNBA in selling the property that secured the Loan because the Contract does not contemplate foreclosure sales and therefore does not contemplate the recovery of costs associated with foreclosure sales. The Court finds Section 7 on Indemnity inapplicable here given the circumstances of the case.

[5] Paragraph 1 of Section 6 of the Contract provides that in the event of a breach, Spectrum would owe the outstanding principal balance of the Loan plus all accrued and unpaid interest due on the Loan as of the date of repurchase. (Doc. 35 Ex.A p.5.) The Note provided that Borrower's interest rate on the Loan would be 8.25%. (Doc. 35 Ex.B.)

Borrower's default once the Complaint was filed. Spectrum could have chosen to repay the Loan rather than continuing to defend this lawsuit. The Court therefore determines that Spectrum shall pay pre-judgment interest on the $37,750 at the rate of 8.25% from April 28, 2008 until Spectrum satisfies this judgment. Plaintiff shall receive post-judgment interest at the applicable federal rate.

Plaintiff also seeks its attorneys' fees. The Court will not make a determination regarding attorneys' fees at this time. Plaintiff can file a motion for attorneys' fees pursuant to Federal Rule of Civil Procedure 54(d)(2) and Local Rule of Civil Procedure 54.2 at the appropriate time.

Accordingly,

IT IS ORDERED GRANTING Plaintiff's Motion for Summary Judgment (Doc. 34) and awarding Plaintiff damages in the principal amount of $37,750, plus pre-judgment interest at the rate of 8.25% from April, 28, 2008, plus post-judgment interest at the applicable federal rate.

IT IS FURTHER ORDERED DENYING Defendant's Motion for Summary Judgment (Doc. 50).

DATED this 3rd day of August, 2010.

James A. Teilborg
United States District Judge